IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER CEJA,<br><br>Defendant. | CR 19-141-BLG-SPW<br><br><br><br>ORDER DENYING MOTION<br><br>TO SUPPRESS |

Before the Court is Defendant Ceja's Motion to Suppress evidence seized from his vehicle, a black 2002 GMC Yukon, during a traffic stop. (Doc. 31). A hearing on the motion was held October 15, 2020. After considering the parties' briefs and the testimony presented at the hearing, for the reasons below, the motion is denied.

I. Facts

In Spring 2019, FBI Task Force Agent Charles Moffet worked with a confidential information (CI) during his investigation of drug trafficking into

Billings, Montana. He learned through the CI of a large shipment of methamphetamine coming into the city; originally slated for a late February delivery, it was postponed until mid-March of that same year. Ultimately, the CI informed Moffet that the delivery would arrive on the afternoon of March 12. The target vehicle, based on this information, was a California-plated SUV. The CI was directly speaking to the supplier of the drugs through a phone number Moffet and the task force had linked to the supplier, Javier Santillanes, over more than a two-year period. The CI assisted the Task Force from coordinating the initial shipment to its delivery to Billings. Ultimately, Moffet, through the CI, redirected the shipment from one location in Lockwood to a different location in downtown Billings.

On March 12, 2019, the Eastern Montana High Intensity Drug Trafficking Area Task Force (HIDTA) contacted Billings Police Department (BPD) Officer Eric Schnelbach requesting his assistance with a vehicle that arrived in Billings and allegedly contained a shipment of drugs. The alert described the vehicle as a black SUV with California license plates and described that the vehicle was headed his way. Schnelbach positioned himself on a corner along the route to intercept the vehicle, at the intersection of 3rd Avenue South and South 27th Street, and shortly thereafter saw the described SUV driving toward him. Schnelbach, identifying the vehicle as matching the HIDTA description, noticed that it lacked a front license

2

plate and that the SUV failed to yield to a pedestrian apparently waiting to cross the busy road. As the SUV proceeded through the intersection, Schnelbach pulled behind the vehicle, turned on his lights and siren, and initiated a stop of the SUV.

Schnelbach approached SUV and collected the driver's information and informed the driver that he failed to yield to a pedestrian and that was why he was pulled over. Back at his patrol car, Schnelbach ran the plates and license, learning that the driver was Christopher Santillanes Ceja and the vehicle, a GMC Yukon, was registered in his name—confirming information provided by HIDTA. Schnelbach asserted that Ceja was evasive about the details of his trip that day, and that he seemed impatient and nervous. At this point, BPD Officer Lausch had arrived to assist with the stop. While Schnelbach confirmed the information, Lausch stood next to Ceja to ensure that Ceja did not use his phone and to watch his movements.

Schnelbach returned to Ceja and handed him a citation, explaining that Ceja had failed to yield to a pedestrian in violation of Montana law. Schnelbach continued to ask Ceja questions about his trip and asked for consent to search the Yukon. Ceja denied consent and did not answer the questions, instead requesting to end the stop and go on his way. The officers told Ceja he was not free to leave and asked for his consent to run a drug dog along the Yukon's exterior. After Ceja once again declined, Officer Lausch told him he would deploy his canine unit,

3

Tabasco, regardless. Schnelbach testified that BPD's usual practice is to ask consent even if officers believe that consent is not required to legally search or sniff the vehicle. Schnelbach indicated that he believed, given the specific information from HIDTA and Ceja's evasive answers and behavior, there was information sufficient to allow a dog sniff, all in conformity with standard protocols. He further indicated, and Lausch corroborated, that it is routine to first conduct a traffic stop and then, if necessary, conduct the drug stop immediately after (rather than conducting both simultaneously).

Lausch and Tabasco examined the perimeter of the vehicle several times, and Tabasco sat down, apparently indicating the presence of drugs, at the front grill of the vehicle. After receiving the indication, the officers told Ceja they would be applying for a search warrant given this indication and that while Ceja was free to leave, the vehicle and its contents were not. Task Force Agent Moffet applied for the search warrant and provided his affidavit including information about the dog sniff provided by Lausch.

Further specific facts relevant to each portion will be incorporated as necessary below.

## II. Standard of Review

On a motion to suppress, the Ninth Circuit reviews legal conclusions de novo and factual findings for clear error. *United States v. Basher*, 629 F.3d 1161, 1167 (9th Cir. 2011).

### III. Discussion

Ceja challenges the search and seizure of the drugs on several grounds, arguing the initial stop lacked reasonable suspicion, was a mere pretext for a drug search, and was unlawfully prolonged. (Doc. 32). Ceja further argues that the search of the vehicle was unconstitutional because the underlying warrant contained material omissions about the dog's alert behavior and the evidence must be suppressed as the product of an unlawful search. (Doc. 32).

*A. The officers possessed reasonable suspicion to stop Ceja due to the corroborated and reliable information from the CI.*

The Fourth Amendment permits brief investigative stops when a law enforcement officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 134 S.Ct. 1683, 1687 (2014) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)). The reasonable suspicion necessary to justify an investigative stop is dependent upon both the content of information possessed by police and its degree of reliability. *Navarette*, 134 S.Ct. at 1687 (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)).

Reasonable suspicion need not be based solely on an officer's personal observation; the officer may rely on information supplied by another person. *Navarette*, 134 S.Ct. at 1688 (citing *Adams v. Williams*, 407 U.S. 143, 147 (1972)). But information supplied by an informant must have sufficient indicia of reliability before it can contribute to an officer's reasonable suspicion. *Navarette*, 134 S.Ct. at 1688. Multiple factors bear on the reliability of information supplied by an informant. *See White*, 496 U.S. 325 (independent police corroboration of information); *Florida v. J.L.*, 529 U.S. 266 (2000) (anonymity of informant); *United States v. Terry-Crespo*, 356 F.3d 1170, 1176 (9th Cir. 2004) (exigent circumstances); *Terry-Crespo*, 356 F.3d at 1176-1177 (whether informant's knowledge was first-hand or second-hand); *Terry-Crespo*, 356 F.3d at 1177 (whether informant's report was contemporaneous with suspected criminal activity). In determining reasonable suspicion, the Court must consider all of the information under the totality of the circumstances. *Navarette*, 134 S.Ct. at 1687.

If a person is stopped for violating the traffic code, the stop may not be prolonged beyond the time reasonably required to complete the mission of the stop. *Rodriguez v. United States*, 135 S.Ct. 1609, 1614 (2015) (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). Because addressing the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate that purpose." *Rodriguez*, 135 S.Ct. at 1614. Authority for the stop ends when tasks tied to the traffic infraction

are, or reasonably should have been, completed. *Rodriguez*, 135 S.Ct. at 1614. Such tasks typically include checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Rodriguez*, 135 S.Ct. at 1615. In addition, passengers may be ordered to exit the vehicle, asked to produce ID, and questioned about travel. *United States v. Betancourt*, 277 Fed.Appx.708 (9th Cir. 2008); *United States v. Williams*, 419 F.3d 1029, 1031 (9th Cir. 2005).

Ceja claims that Officer Schnelbach lacked reasonable suspicion to stop him, asserting that Schnelbach's stated reason—Ceja's failure to stop for a pedestrian—was a pretext because of the speed of the traffic and the traffic conditions at the time, the temporal impossibility for Ceja to yield to the pedestrian while driving 35 miles per hour, and the absurd result of all traffic grinding to a halt for anyone who looks like they may intend to cross at any possible intersection. Ceja also asserts that because multiple other drivers (and Schnelbach himself) failed to yield, the officer did not have particularized suspicion to stop Ceja. This defines the reason for the stop too narrowly and is therefore incorrect.

Because Schnelbach and the rest of HIDTA possessed reliable information that Ceja, while driving the Yukon, was presently involved in drug trafficking, Schnelbach had reasonable suspicion to stop the vehicle. The informant was in contact with the alleged supplier of the drugs, Javier Santillanes. This contact was

checked against and confirmed to match separate information law enforcement possessed regarding Santillanes's contact information. The informant, while in direct contact with the source, provided real-time information to law enforcement about the date and time of the shipment, and even updated that information from a morning to an evening delivery after receiving new information. The information matched suspected criminal activity: it is highly unusual for a car to arrive at a hotel and then leave soon after, in exact conformity with the schedule and updated location provided by the informant. These factors each bear positively on the reliability of the informant and in totality provide reasonable suspicion for the decision to stop Ceja. The cases Ceja cites are not on point because they lack the sufficiently corroborated informant material of the present case.

> B. *The officers likewise possessed probable cause to search Ceja's vehicle—for that reason, the stop does not constitute mere pretext and was not unlawfully prolonged.*
>
> > 1. Prolongment of the traffic stop was acceptable because the officers had independent reasonable suspicion that Ceja was currently involved in drug trafficking and because the stop was not merely pretextual.

An officer may prolong a traffic stop if the prolongation itself is supported by independent reasonable suspicion. *United States v. Evans*, 786 F.3d 779, 788 (9th Cir. 2015). As discussed above, officers may rely on sufficiently reliable

8

informant material in forming that independent reasonable suspicion. Plainly, law enforcement may not use traffic violations to fish for further violations or to investigate hunches; however, that is not the case here. As discussed in the preceding section, officers already possessed independent reasonable suspicion of drug crimes when they stopped Ceja for a traffic violation. The stop was not altogether unreasonably long or otherwise violative. In total, the encounter lasted approximately 20 minutes. The Court cannot say that the stop was not conducted with reasonable diligence given the facts possessed by the officers.

2. The search of the SUV was supported by independent probable cause derived from reliable CI information and the drug dog's alert behavior.

Ceja argues that because the drug investigation was undertaken subsequently to the traffic stop, rather than simultaneously, the detention necessary to conduct the dog sniff was unlawful. As discussed above, this stop is most accurately viewed as two stops: a drug investigation and a traffic law violation, each supported by independent facts. Therefore, Ceja's reliance on undue prolongment is misplaced. The facts of the case provide the necessary probable cause to support the traffic stop, the dog sniff and the subsequent search of the vehicle in the Court's view. The search was supported by statements from the confidential informant, text messages and phone calls between the CI and Santillanes, the

vehicle's movements corroborating the information from those sources, and information previously obtained by law enforcement about Santillanes and Ceja.

C. *Ceja has not produced evidence sufficient to meet his burden under* Franks.

Affidavits in support of search warrants are afforded a presumption of validity. In order to challenge that validity, the U.S. Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978) required the following: the challenger must present more than conclusory allegations of falsehood or reckless disregard; there must be specific portions of the affidavit claimed to be false with a supporting statement of reasons; and the challenger must present an offer of proof or satisfactorily explain its absence.

A *Franks* analysis is a challenge to the affiant. Here, Task Force Officer Moffet is the relevant affiant. Moffet relied on Officer Lausch's training and expertise regarding Tabasco's indication behavior when crafting the warrant application. As a result, the relevant question is whether Moffet knowingly included a falsehood in the affidavit/ application or acted with reckless disregard for the truth in that document. To that end, Ceja has produced no evidence tending to show either falsehood or reckless disregard. Tabasco alerted according to his handler and Moffet said such in the affidavit. Failure to meet the first requirement is necessarily fatal to the whole challenge. The Court need not progress further into the *Franks* claim and Ceja's challenge on that ground is denied.

*D. Suppression would not be the proper remedy in this case, even if Ceja was correct, because officers relied on a facially valid warrant in good faith.*

Furthermore, the Court notes, even if the warrant contains a flaw, facially valid warrants, even if later determined to be insufficient, may be relied upon by law enforcement officers acting in good faith. *Herring v. United States*, 555 U.S. 135, 142 (2009). There is no evidence showing that the conduct at issue is sufficiently deliberate and that the police are sufficiently culpable in the Fourth Amendment violation, and therefore this situation does not fit into any of the exceptions to the good faith doctrine, even assuming the challenge did not fail for the reasons stated above. Suppression of the evidence obtained in reliance on the warrant would not be the appropriate remedy in this instance.

## IV. Conclusion

Ceja has failed to meet his burden in challenging the stop and subsequent search as unconstitutional. Therefore, Defendant's Motion to Suppress (Doc. 31) is DENIED.

DATED this 1st day of December, 2020.

/s/ Susan P. Watters

SUSAN P. WATTERS
United States District Judge